R. A. HEFNER v. THE STATE.

No. 2521. Decided January 28, 1903.

**Misconduct of Jury—Discussion of Punishment Assessed at a Former Trial.**
On a trial for rape, where the punishment assessed was fifteen years in the penitentiary, and it appeared that while the jury were discussing the penalty one of the jurors asked what was the penalty assessed on the former trial, and another juror stated he had heard it was fifteen years, Held, such misconduct as required a reversal of the conviction.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of rape; penalty, fifteen years imprisonment in the penitentiary.

The judgment being reversed solely on account of the misconduct of the jury, the facts concerning which are fully set out in the opinion, it is needless to make any other statement.

*Parker, Carlton & Carter,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of rape, and given fifteen years in the penitentiary.

The fourth bill of exceptions shows that upon the hearing of the motion for new trial appellant placed juror N. W. Webb on the stand, who testified as follows: "I was one of the jurors who tried the case of State v. Hefner, and upon Friday night prior to Saturday morning, when the verdict was returned, myself and two other jurors were sitting together and alone in a room. The other jurors at this time were in another room. It was rather late at night, but I could not say whether the others had gone to bed or not. The other two jurors who were with me were strangers to me, as I had never seen them before they were impaneled. I think their names were Raney and Havens. I am not positive though, and will not swear that it was Raney and Havens; but I thought at the time, and still think, they were the men. While we were in the room together, the other two jurors were standing up by the window, and I was sitting down on a bed near them. We were all discussing; and trying to see if we could agree on the penalty that should be given the defendant. We disagreed as to the amount that should be given him. One of the jurors was for the low penalty, and the other for a higher penalty. I was for a low penalty myself. While we were discussing the amount that should be given defendant, one of the jurors—I am not sure which one—asked the question, 'I wonder what he got before?' To this question I replied, 'I have heard that he got fifteen years,' when one of the other jurors immediately said, 'We must not discuss that,' and we did not discuss it, or mention the fact of a former trial or conviction any further. The amount of the pen-

alty defendant got before did not in any way influence my verdict. I did not believe defendant ought to have had but five years, as he was thirty-six years old; and, as I had guarded penitentiary convicts a good deal in my life, and knew what they had to go through with, I thought fifteen years was too long. But I afterwards agreed to fifteen years. When we first went out to consider our verdict, myself and two others had doubts about defendant's guilt, and refused to vote he was guilty; but afterwards we agreed he was guilty, and so voted before we separated in the evening, before we returned our verdict the next morning. We did not agree, however, as to the amount of the penalty, until next morning, a few minutes before we returned our verdict." J. R. Rucker testified that he did not remember hearing the juror Webb say at any time what defendant got on the former trial, but he may have done so; will not say that he did not, but, if he did, witness did not hear it. "Juror Holmes asked me on Saturday morning while we were discussing the case, what defendant got before. I replied to him that we must not discuss the former trial, but that I could answer him, and do no harm, because I could not tell him that I did not know what he got before. This is the only inquiry about the former trial that I heard while we were discussing the case. When Holmes asked me this question, we had not agreed on the penalty; only on the guilt. When we first went out to consider the case, juror Read and two other jurors, one of whom was juror Webb, expressed doubts about the defendant's guilt, and refused to vote he was guilty. The vote ranged from five to fifty years." Juror Hale testified that he did not hear juror Webb say anything about the former trial. "I did hear some of the jurors, on Saturday morning, before the verdict was returned, and while we were discussing the penalty, ask about a former trial. Did not know what juror it was. As soon as this question was asked, I at once stated that we had nothing to do with the other trial, and the question was not repeated, and I never heard anything further about it from anybody." Juror Raney stated that he did not hear juror Webb say anything about the former trial, nor anyone else. After the above testimony was introduced on the motion for a new trial, the court postponed the hearing for one week, and until May 26th. Thereupon the State introduced the following affidavits: Juror Holmes stated that he had heard no discussion by Webb or any other juror about the former verdict. The jurors Carlyle and Bennett's affidavits are to the same effect. Jurors Hope, Fulkerson, Havens, Raney, and Stewart each make affidavit as follows: That they did not hear any inquiry from any source concerning a former trial of defendant, while they were discussing the case; did not remember to have heard juror Webb, or any other person, state what defendant got before; did not know what he got on the former trial until after the verdict was rendered and they were discharged; that there may have been inquiries about the former trial, but they did not hear of them. Juror Read testified substantially as did the above jurors, and among other things, states that Keith "told me this morn-

ing that juror Webb, who helped to try the case, had been fined and imprisoned in the county jail; that he paid no attention to the fact that Webb had been fined, and was perfectly willing to disclose everything that happened while the jury was deliberating, as far as he knew." Bill number 5 complains that, when the motion for new trial came on to be heard, eight of the jurors who tried said cause were present, and four were absent. The juror Webb testified substantially as heretofore detailed; and, after Webb had so testified, and after all the other seven had testified, as shown by the above statements, the court then announced it would postpone any further hearing of said motion until that day week, in order that the other four jurors could be procured as witnesses. That the other jurors had not been summoned, and were not in attendance. That the court then called all of the eight jurors, including juror Webb, into the jury box. That at the time the said jurors were called into said box quite a number of spectators were in the courtroom. That the court addressed the juror Webb in the presence and hearing of the other jurors and in the presence and hearing of said spectators, and said to juror Webb: "I charged you in this case to consider only the evidence introduced in the trial before you. You have shown by your own testimony that you violated the charge, and told other jurors what penalty defendant got upon the former trial. This was contempt of this court, and a violation of law, and I now assess your punishment at a fine of $25, and at imprisonment in the county jail for twenty-four hours; and the sheriff is now ordered to take charge of you, and put you in jail, and keep you there for twenty-four hours, and until said $25 is paid. I intend to teach jurors to stay by the record, and obey my instructions; if I can not do so I will resign." As we understand the statement of the learned trial court, he assessed a fine against juror Webb for a discussion or statement of the result of the former trial to the jury. The record also shows that two or more of the jurors asked the question what punishment defendant received on the former trial, to which no answers were given. However, the record shows that the verdict on this trial is a duplicate of that rendered on the former trial, and the statement of the judge indicates to our minds that he believed the juror had discussed or stated the amount of the verdict rendered on the former trial to the jury prior to the time they agreed on their verdict. This being true, it necessitates a reversal. We can not speculate as to the effect of such conduct on the minds of the jury. We do not deem it necessary to cite authorities on this question, as it has so often been passed upon by this court. Where such conduct is shown, the only alternative is for this court to reverse.

For the misconduct of the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*